STATE OF VERMONT

ENVIRONMENTAL COURT

| | |
|---|---|
| Appeal of Green Meadows | Docket No. 208-12-01 Vtec |
| Center, LLC } | |
| } | Docket No. 152-9-01 Vtec |
| Appeal of Tierney, <u>et al.</u> } | |
| } | Docket No. 179-10-99 Vtec |
| Appeal of Gilberg, <u>et al.</u> } | |

Decision and Order on Pending Motions

All three of the above-captioned cases involve the same property in Wilmington, Vermont. Docket No. 208-12-01 Vtec is an appeal from the Planning Commission' s denial of approval of a Planned Unit Development (PUD) for the property. Docket No. 152-9-01 Vtec is an appeal from the ZBA' s grant of conditional use approval (Application #844) for the uses proposed in connection with the Planned Unit Development. Docket Nos. 208-12-01 Vtec and 152-9-01 Vtec have been consolidated with each other. Docket No. 179-10-99 Vtec is an appeal of a 1999 conditional use permit (Application #803) issued by the ZBA for the property.

In each of these cases Patricia Tierney, John Scott, Louis Beaudette and Cynthia Beaudette are represented by Robin L. Stern, Esq.; the Town of Wilmington is represented by Richard M. Gale, Esq.; and the Applicants Green Meadows Center, LLC, Southeast Vermont Community Action, and The Community Alliance are represented by Richard D. Perra, Esq. In Docket No. 179-10-99 Vtec, Michael and Ellen Gilberg now represent themselves; however, Mr. Gilberg specifically has declined to enter his appearance in the PUD cases, Docket Nos. 208-12-01 Vtec and 152-9-01 Vtec, but has joined in the memoranda filed by Attorney Stern, to the extent they are not inconsistent with his position. Two citizens of Wilmington, Jennifer Fitzgerald and Clifford Duncan, have been dismissed as interested parties from these appeals, but continue to receive courtesy notices of the proceedings.

Because the Applicants are appellants in the most recent case, and are appellees in the two earlier cases, we will refer to them as ' Applicants,' and will refer to the parties represented by Attorney Stern as ' Neighbors.' The term ' Neighbors' includes the Gilbergs unless the context requires differentiation, in which case we will refer to the Gilbergs by name.

Applicants' Motion for Judgment as a Matter of Law

Applicants have moved for judgment as a matter of law as to Question 1 and Questions 7 through 14 from the Statement of Questions filed October 14, 1999 in Docket No. 179-10-99 Vtec, and as to Question 7 and Questions 9 through 21 from the Statement of Questions filed February 1, 2002 in Docket No. 152-9-01Vtec. Some of those issues were concluded by the Court' s Decision and Order dated November 27, 2000 in Docket No. 179-10-99 Vtec. We will take each question in turn.

Docket No. 179-10-99 - Question 1

This issue was concluded by the Court's November 2000 Decision and Order, that the 1998 Conditional Use Permit and its extension provision became final and cannot now be challenged, directly or indirectly, even if there was no basis in the ordinance or statute for the extension provision. The ZBA's action under the extension provision on June 21, 1999 to extend the permit's expiration date to June 21, 2001 therefore also cannot be challenged for lack of authority, as such a challenge would amount to an indirect challenge to the extension provision in the 1998 permit.

However, any additional questions about the validity of that permit after June 21, 2001, during the pendency of Act 250 permit applications or the various zoning appeals, are not raised by Question 1 and were not concluded by this Court's November 2000 Decision and Order. The Court makes no ruling whether such additional questions are properly raised in any of these appeals; if they were properly raised, material facts would be in dispute as to such questions.

Docket No. 179-10-99 - Questions 7 & 8

Material facts are in dispute as to whether the project will adversely affect traffic on roads or highways in the vicinity, regardless of whether any traffic expert recommended any particular reduction in speed limit at the prior hearings; regardless of whether any changes have been made in the speed limit since the litigation began; and regardless of whether any permit limitations imposed by the Act 250 process may have any effect on the traffic analysis.

Docket No. 179-10-99 - Question 9 and Docket No. 152-9-01 - Question 10

These issues were concluded by the Court's November 2000 Decision and Order, that the sideline setback is 20 feet in the Residential zoning district, and that the ordinance does not provide for an increased setback for commercial uses in a residential district.

Docket No. 179-10-99 - Question 10

Unlike Question 9, material facts are in dispute as to whether, when and under what circumstances the side setback of 22 feet was created by the Applicants or their predecessors, and as to whether that setback is adequate in fact or is entitled to any so-called 'grandfathered' treatment. The Court's November 2000 Decision and Order noted that an increased setback for commercial uses adjacent to residential uses may be imposed if necessary as a condition in a conditional use permit.

Docket No. 179-10-99 - Question 11 and Docket No. 152-9-01 - Question 11

Similarly to Questions 9 and 10, the ordinance does not provide for commercial district parking requirements to be imposed on commercial uses in a residential district; however, increased parking requirements may be imposed if necessary as a condition in a conditional use permit. Material facts are in dispute as to whether such parking restrictions are necessary to meet the conditional use criteria.

Docket No. 179-10-99 - Questions 12 & 13 and Docket No. 152-9-01 - Questions 12 - 16

Material facts are in dispute as to whether conditions should be imposed regarding the entity expected to own or manage the project, and whether a bond should be required, to meet the conditional use criteria or the Planned Unit Development criteria. These facts are in dispute regardless of whether or what conditions have been imposed in the Act 250 process regarding the ownership and/or operations of the project.

Docket No. 179-10-99 - Question 14 and Docket No 152-9-01 - Question 20

Applicants are correct that the Wilmington Zoning Ordinance applicable to the conditional use permit do not require the project to demonstrate compliance with the Town Plan. Many towns do require compliance with ' the municipal plan and any other bylaws in effect' but Wilmington' s ordinance only requires that the proposed use not adversely affect " other bylaws then in effect." Of course, the standards applicable to the Planned Unit Development decision at issue in Docket No. 208-12-01 Vtec do require an analysis of the project' s conformance with the Town Plan, and the Court expects that evidence as to those issues will be presented at trial.

Docket No 152-9-01 - Questions 7 and 18

Applicants argue that the notice of the public hearings was adequate, and that the lack of procedural information regarding appeal rights was harmless error. The Neighbors argue that the ZBA failed to comply with the notice requirements for the public hearings for Application #844, and that the permit when issued lacked any notification of the time within which an appeal could be taken to this Court. However, the Neighbors do not assert any detriment to them stemming from either failure. If the lack of proper notice prevented them from participating in the hearings before the ZBA, it could be grounds for a remand to the ZBA. If the lack of notification of appeal rights prevented them from bringing a timely appeal, it could be grounds for allowing an appeal to be filed out of time, or for a remand to the ZBA. However, without any showing of harm to the Neighbors, the lack of notice does not warrant a remand in this de novo proceeding.

Docket No. 152-9-01 - Question 9

As discussed below under the Neighbors' motion, § 7.F. of the zoning ordinance provides for Planning Commission approval of a proposed PUD, and for prior ZBA conditional use approval of any uses that are conditional uses in the district in which the project is located. The standards for conditional use approval remain those in Section 7 of the ordinance regarding conditional uses. They have not been changed or augmented by the adoption of § 7.F. The Court will apply the conditional use standards de novo in Docket No. 152-9-01 Vtec.

Docket No. 152-9-01 - Question 17

Applicant is correct that 24 V.S.A. § 4407(12) does not restrict Planned Unit Development regulations to those towns that have adopted subdivision regulations. Section 4407(12) merely allows the Planning Commission to rule on a subdivision application and a PUD application in the same proceeding.

Docket No 152-9-01 - Question 19

If any of the Neighbors is precluded by principles of <u>res judicata</u> from raising the question of whether the Planned Unit Development ordinance was properly adopted, it would only be Cynthia and Louis Beaudette who would be so limited, as they appear to have been the only parties to the Windham Superior Court action regarding the validity of the vote adopting that ordinance. However, adoption of an ordinance amendment is not an action of the ZBA or Planning Commission that is cognizable in Environmental Court.

Docket No 152-9-01 - Question 21

Applicants did not apply for a Planned Residential Development. The Court must determine whether or not the project meets the criteria for approval as a Planned Unit Development.

<u>Neighbors' Motion for Judgment as a Matter of Law</u> (issues not already addressed above)

The Neighbors argue as a matter of law that many of the uses applied for in the conditional use permit application (#844) that is the subject of Docket No. 152-9-01 Vtec are not allowed in the district. They also argue that as a matter of law the ZBA failed to apply the standards required for conditional uses in a PUD.

The application for conditional use approval #844 is <u>de novo</u> before the Court and the Court will apply the standards required by the Wilmington Zoning Ordinance. The ordinance as amended provides in § 7.F. that the Planning Commission can approve as a PUD a project that otherwise would not meet some of the following criteria in the zoning regulations for that district: " lot size, bulk or type of dwelling, commercial or industrial use, density, lot coverage, and required open space." The purpose statement of the PUD provision begins with the purpose " to encourage planned communities or community centers for residential, commercial and/or industrial/service/recreational uses or any combination thereof."

Prior to applying to the Planning Commission, under § 7.F.(2), an applicant for a PUD must apply to the ZBA for approval of those uses within the project that are conditional uses in the district in which the project is located. The next sentence states that the uses allowed in a PUD " shall be limited to those permitted and conditional uses within <u>either</u> district." (Emphasis added). The Neighbors argue that the latter sentence should be interpreted essentially as if it also limited the uses within a PUD to the " permitted and conditional uses ' within the district in which the project is located.' " However, we must apply the principles of statutory construction to interpreting an ambiguity in a new ordinance. The Selectboard is presumed to have intended the distinction it made by using the two different phrases: ' the district in which the project is located' and ' within either district.'

It gives effect to all sections of the ordinance to interpret the second phrase, " within either district," to mean that the uses within a PUD are limited to those uses allowed anywhere in town; that is, to exclude only those uses excluded generally from the town. This interpretation is

consistent with the purpose of a PUD to provide for planned developments combining " residential, commercial and/or industrial/service/recreational uses or any combination thereof" (emphasis added). It is also consistent with the definition of a PUD as an area of land to be developed as a single entity for mixed uses, the plan for which does not comply with the regulations of " the district within which it is located" regarding, among other things, the " type of dwelling, commercial or industrial use." Therefore, Applicants may apply to the Planning Commission for approval of a PUD that includes uses otherwise not allowed as conditional or permitted uses within the district in which the project is located, as long as the uses are conditional or permitted uses within the town. Only those uses that are conditional uses in the district in which the project is located must also receive prior conditional use approval from the ZBA.

The Neighbors argue that because the project proposes residential uses (six senior residences and six visitor residences) it should be reviewed as a Planned Residential Development (§ 7.E.). The zoning ordinance does not require such review, as the PUD section (§ 7.F.) of the ordinance allows for residential uses in the mixed uses of a PUD.

While the Neighbors are correct that the PUD regulations require a review of the number of units that otherwise would be allowed under the density requirements of the zoning ordinance (see § 4 on page 2 of the amendment adopting § 7.F.), that analysis must be made by the Planning Commission in reviewing the PUD, and not by the ZBA in conducting its conditional use review of any of the uses proposed for the project that are conditional uses in the district in which it is located.

The Neighbors argue that the ZBA erred in relying on the Act 250 permit. In this de novo proceeding the Court will determine to what extent the project as described in the Act 250 permit has been incorporated by reference into the Applicants' application for the conditional use permit #844 or for the PUD. Both applications that are the subject of Docket Nos. 152-9-01 and 208-12-01 Vtec will be addressed on their merits under the Town ordinances.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that each party' s motion for judgment as a matter of law has been granted in part and denied in part, as discussed above, and in the November 2000 decision and order relating to Docket No. 179-10-99 Vtec. All other questions or portions of questions in the statements of questions in Docket No. 179-10-99 Vtec and Docket No. 152-9-01 Vtec, as well as in Docket No. 208-12-01 Vtec, remain for the hearing on the merits. On or before May 29, 2002, for each question in the statement of questions for each of the three cases, the party posing those questions (that is, the appellants for that particular case) shall file a brief outline of whether the issue has been concluded, concluded in part, or remains for the hearing on the merits. Any dispute as to this filing shall be filed so that it is received by the Court on or before June 10 2002, so that any dispute can be resolved prior to trial.

At trial, the parties should be prepared to address the relevance, if any, of the Act 250 permit to these applications, and in particular whether it was incorporated by reference into Application #844.

The merits of all three of these matters remain scheduled for June 26, 27 and 28, 2002, in Brattleboro. If a telephone conference is requested, it can be scheduled for the morning of May 29, 2002, for June 10, 2002, or for late afternoon on June 13, 2002. If an in-person conference would be useful, it may be possible to schedule one for the late afternoon of May 29, 2002, in Brattleboro. Please advise the Court as soon as possible if a conference is requested.

Done at Barre, Vermont, this 13th day of May, 2002.


_____
Merideth Wright
Environmental Judge